Greg Smith, Attorney (USB 6657)
ALA PC
8813 S. Redwood Road Suite C-2
West Jordan, UT 84088
Telephone 801-255-0123/801-651-1512
Fax: 801-255-2134
Email:  gs@justiceinutahnow.com
*Attorney for Plaintiff*

**IN THE UNITED STATES TENTH CIRCUIT
STATE OF UTAH DEPARTMENT**

| | |
|---|---|
| MATTHEW ADAMSON<br><br>      Plaintiff<br><br>vs.<br><br>COLEMAN EXCAVATION (XCAVATION) INC., KYLE COLEMAN, WALLACE COLEMAN, DON COLEMAN<br><br>      Defendants | **COMPLAINT**<br><br>**Case No.**<br><br>**Judge:** |

Plaintiff files this Complaint and complains against Defendants as follows:

**I.  PARTIES**

Matthew Adamson, Kyle Coleman, Wallace Coleman, and Don Coleman are individual citizens, who reside in Utah.  Coleman Xcavation is a business located in Utah, and is in good standing.  The State of Utah has the Address as 737 North 730 East, American Fork, UT 84003.  The registered agent is Wallace R. Coleman.

## II.  JURISDICTION AND VENUE

This Court has personal jurisdiction over Defendants because this case involves a federal question, which is the United States Fair Labor Standards Act, which says that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates [$7.25 an hour].  29 U.S.C.A. § 206.

The Court also has jurisdiction under § 18 USC 2510 *et seq*. The Court this has been filed in is a court of general jurisdiction, and under 29 U.S. Code Chapter 8 - FAIR LABOR STANDARDS (and 29 U.S. Code § 216 - Penalties), The Court also has supplemental jurisdiction pursuant to 28 U.S. Code § 1367.  Also, Utah Code 34-28-3; UT Admin. Code 610-3-18.  "Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,' U.S.Const., Art. III, s 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'[12] The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a

plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966).  In this case, all the claims arise out of the same common nucleus of operative fact, and the state claims are not novel, and are well established by Utah common law and statutes.

### III.  VENUE

All the relevant facts took place in Utah County, State of Utah, so this court is the proper court.

### IV.  BRIEF OVERVIEW OF FACTS AND CASE LAW.

Mr. Matthew Adamson worked for Defendants as a "covered," "non-exempt hourly employee" under the FLSA.  At some point while working for them, Don Coleman gave him a loan for about $2,500, and Mr. Adamson was paying it back.  When Mr. Adamson left the employ of Defendants, they seized his entire paycheck, despite the fact they had neither oral nor written permission to do so.  That seizure put his paycheck below the minimum wage.  Case law says:

> If the deduction were made at the employee's direction for the purpose of paying another creditor **besides the employer**, it might properly be considered part of his wages, but the employer-employee relationship brings into play special considerations, including the superior bargaining position of the employer. **The voluntariness of an assignment of wages to the employer is inherently suspect. When the employer is the creditor, payment may not be made by paycheck deductions which reduce net pay below minimum wage, even where the employee apparently consents to such an arrangement**. . . . The Secretary's regulations under the Act are in accord with this view: Where an employer is directed by a voluntary assignment or order of his employee to pay

3

a sum for the benefit of the employee to a creditor, donee, or other third party, deductions from wages of the actual sum so paid is not prohibited: *Provided,* That neither the employer or any person acting in his behalf or interest, directly or indirectly, derives any profit or benefit from the transaction. In such case, payment to the third person for the benefit and credit of the employee will be considered equivalent, for purposes of the Act, to payment to the employee. 29 C.F.R. § 531.40(a). The quoted portion of the regulation permits deductions at the direction of the employee to pay a third party, but only where the employer does not benefit from the transaction. **Since the employer clearly does benefit from deductions made to satisfy a debt owed to him, such deductions are prohibited to the extent they cut into the employee's minimum wage**.  Bold added. *Brennan v. Veterans Cleaning Serv., Inc.,* 482 F.2d 1362, 1370 (5th Cir. 1973).

Under Utah law, "An employer may not withhold or divert part of an employee's wages unless: (a) the employer is required to withhold or divert the wages by: (i) court order; or (ii) state or federal law; (b) **the employee expressly authorizes the deduction in writing**; (c) the employer presents evidence that in the opinion of a hearing officer or an administrative law judge would warrant an offset . . . . Utah Code Ann. § 34-28-3.

### V.  STATEMENT OF FACTS (BASED ON INFORMATION AND BELIEF)

1. Defendants' business (Coleman Xcavation) makes over (brings in) over $500,000 per year.

2. The business "Coleman Xcavation" is owned and run by Kyle, Don and Wallace Coleman, and they are the "owners."

3. Defendants' business has at least two employees.

4. Defendants hired Mr. Adamson on or about March of 2012.

5. They started him as an hourly worker at $10 an hour, and when he ended, they were paying him $12 an hour (still an hourly worker).

6. Based on hostile and other bad working conditions, he felt he had no choice but to leave their employ.

7. In other words, he felt he was constructively fired.

8. On or about October of 2015, Don Coleman, and owner of he company, gave Matt a loan for approximately $2,500, but there was no amount of interest that was discussed.

9. Don wrote Matt a check for that amount.

10. Don is an owner of the company.

11. Based on Matt's recollection, that check was written off Don's personal checking account.

12. Matt paid $250 on that loan every two weeks or so.

13. There was nothing in writing to support that loan, nor the terms of its repayment.

14. Matt never gave Coleman Excavation any sort of written wage assignment.

15. Mr. Adamson is not sure how much is still owed on the loan.

16. After being separated from Coleman Excavation (on or about December of 2015), the company refused to pay Matt his final paycheck, which was for 74.5 hours (about $894.00).

17. Instead, the company, either for its own benefit, or the benefit of Don Coleman, but not for the benefit of Mr. Adamson, seized money from Matt, so that Don could be paid.

18. In other words, they seized money from Matt for the benefit of Don and/or the company, and they did this without any judicial order.

19. Defendants refused to pay the wages owed.[1]

---

[1] This was done despite the language of UCA § 34–28–12(1) (providing that employer who "violate[s], or fail [s] to comply with" the UPWA "shall be guilty of a misdemeanor"); § 34–28–12(2) (employer who "refuse[s] to pay the

20. Mr. Adamson, since the separated, has demanded he be properly paid at least three times.

21. Those demands were made in writing.

22. The money that was seized was seized with the intent to either annoy, harass, oppress, hinder, delay or defraud.

23. Minimum wage @ 74.5 hours would be $540.16.

24. Mr. Adamson did not receive the minimum wage owed by Defendants free and clear – in fact, the entire minimum wage he was owed was seized from him.

25. On or about December 22, 2015, Mr. Adamson reached out to the company to rectify the matter.

26. He addressed his correspondence to Don, Kyle and Colemanxcavation.

27. He stated he'd worked really hard for the company "for the last couple weeks," and was not given his paycheck.

28. He stated he felt he had not been treated well, so he quit.

29. He demanded he be paid.

30. He stated he'd worked 74 hours and 30 minutes, that it was Christmas time, and that he needed the money.

31. He stated he understood Don or the company wanted their money that they felt Matt owed, but that Matt still had to live.

---

wages due and payable when demanded" or "falsely den[ies] the amount thereof, or that the same is due" with the intent to secure a discount or the intent to "annoy, harass, oppress, hinder, delay or defraud," is "guilty of a misdemeanor". *Utley v. Mill Man Steel, Inc.*, 2015 UT 75, 357 P.3d 992, 994.

32. He wrote, "I think you got to pay me at least $540," which was the United States Fair Labor minimum wage amount.

33. The response to his request was met with a somewhat vitriolic refusal, which was sent via voicemail by Defendants.

34. Defendants have no good faith reason as to why the minimum wage at issue was not timely paid.

35. He wrote, "[P]ay me my money now please."

36. After that, he was sent a paycheck for $94 dollars.

37. That check was apparently dated January 1, 2016, but he received it around January 13, 2016.

38. Legal Counsel for Mr. Adamson has already spent over ten (10) hours meeting with Mr. Adamson, researching the law on this matter, drafting letters and preparing this Complaint (at the rate of $290 per hour).

39. For approximately two weeks in November and December of 2015, Mr. Adamson conferred valuable benefits upon Defendants.

40. All the work Mr. Adamson did for Defendants was either required or permitted by Defendants.

41. Don, Kyle and Wallace Coleman are employers per 29 U.S.C. § 201, et. seq. of the FLSA, and pursuant to 29 U.S.C. § 215(a)(3).

42. Defendants did not properly pay Mr. Adamson minimum wages per Utah and Federal laws.

43. Mr. Adamson was at all relevant times a non-exempt employee for purposes of the FLSA while he worked for Defendants, and he was not an independent contractor.

44. Defendants are an "enterprise engaged in commerce" within meaning of the Fair Labor Standards Act (FLSA), which defines an "enterprise engaged in commerce" as one whose annual gross volume of sales made or business done was not less than $500,000. Fair Labor Standards Act of 1938, §§ 3(s)(1), 7(a)(1), 29 U.S.C.A. §§ 203(s)(1), 207(a)(1).

45. Defendants' business engages in many commercial and construction endeavors, and has many clients.

46. They engage in the daily use of the US mail system, and the international delivery system of other carriers such as FedEx and UPS to send and receive things in and out of Utah, and they regularly do business with those clients via the telephone, US mail service, in person, and via the internet.

47. Defendants frequently travel on the United States roads for Defendants.

48. Mr. Adamson engaged in construction work for Defendants.

49. All of the Defendants are "employers" for purposes of the FLSA in this case.

50. They are all Utah residents, who are domiciled in Utah, and they acted directly or indirectly in the interest of an employer in relation to Plaintiff, and they suffered or permitted Plaintiff to work for Defendants, and they are largely responsible for why Plaintiff has not been paid.

51. The Colemans listed in this Complaint also have operational control of ColemanXcavation (the covered enterprise), who should be jointly and severally liable under the FLSA for the unpaid wages.

52. Don, Wallace and Kyle Coleman supervised and controlled Mr. Adamson's work schedule, and they regulated the conditions of his employment.

53. They picked materials and tools to be used.

54. Further, they maintained the employment records of Plaintiff, and they set the schedule for Plaintiff, and they decided Plaintiff should not be properly paid for his work, so they seized it, and gave the money to Don Coleman, or kept it for Coleman Xcavation.

55. On information and belief, Defendants essentially think they have the jurisdiction to deem that it is okay for them to direct the withholding of Plaintiff's wages because they somehow have the power to determine how much money should be paid to Plaintiff based on a loan Plaintiff received from Don Coleman.

56. In other words, Defendants withheld Plaintiff's money despite having no court order to do so, and having nothing in writing from Plaintiff giving them permission to do so.

57. Simply put: they just helped themselves to his wages because they felt he owed money to Don Coleman or Coleman Xcavation.

58. All the Defendants monitored Plaintiff's performance, evaluated his work, and addressed and resolved employee issues as they arose.

59.  Defendants also interviewed Plaintiff and hired him.

60. The time for Defendants to properly pay Mr. Adamson has come and passed.

61. Defendants did not promptly pay Mr. Adamson his minimum wage.

62. Plaintiffs actions (work) were the type that a person would expect to be paid for, but he was not paid for them.

63. That has unfairly enriched Defendants.

64. Defendants still have the benefit of the work Plaintiff did for them.

65. Plaintiff should be compensated for all the work he's done for them.

### V. CAUSES OF ACTION

Plaintiff alleges (and is suing Defendants because) Defendants 1) violated the United States Fair Labor Standards Act and Utah wage statutes, which has been laid out above, 2) committed the torts against him of unjust enrichment, conversion (theft[2]) and breach of contract, any 3) other cause of action the facts (known or now unknown) may support.

### VI. PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants as follows:

1. For declaratory relief because the actions of Defendants were wrong, and for an injunction that the behavior be stopped, and an order that they pay Plaintiff his minimum wage.

---

[2] (2) Any individual who violates Subsection 76-6-408(1) or Section 76-6-413, or commits theft of property described in Subsection 76-6-412(1)(b)(iii), *is civilly liable* for *three times the amount of actual damages*, if any sustained by the plaintiff, and *for costs of suit and reasonable attorney fees*. Utah Code Ann. § 76-6-412. Italics added.

2. That this Court enter judgment in the Plaintiff's favor on all counts of this complaint as the Judge deems proper, pursuant to fairness and both case law and statutory law (consistent with the numbers that have been given).

3. That this court award Plaintiffs damages in the amount determined at trial.

4. For an award of reasonable attorney's fees, court costs, a double amount of liquidated damages (29 U.S. Code § 216 - Penalties), and other related collection costs and expenses of Plaintiff, as provided for under applicable laws, torts and the contracts.

5. Any other relief that is fair, legal and/or equitable.

DATED THIS 27th day of December, 2015.

___/s/ Gregory B. Smith____ Attorney for Plaintiff